# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

---

| | | |
|---|---|---|
| S.E. and O.E., minors, | : | |
| by their mother, G.E., | : | |
| | : | |
| Plaintiff's | : | C.A. No. 2016 - |
| | : | |
| v. | : | |
| | : | |
| BROOKLINE PUBLIC SCHOOLS | : | |
| | : | |
| and | : | |
| | : | |
| MITCHELL D. CHESTER, | : | |
| | : | |
| Commissioner of Elementary and Secondary Education | : | |
| Massachusetts Department of Elementary | : | |
| and Secondary Education | : | |
| | : | |
| Defendant's | : | |
| | : | |

---

## COMPLAINT

## PRELIMINARY STATEMENT

This lawsuit is filed on behalf of two students experiencing homelessness who have recently been dis-enrolled from their public schools due to "lack of residency." Plaintiff S.E. is a sophomore in high school who is on track to graduate and her sister, Plaintiff O.E. is a sixth grade student. Plaintiff S.E. attended Brookline High School and Plaintiff O.E. attended Devotion School. Both children have attended school in the Town of Brookline since 2010 when they emigrated with their parents from Israel. Both children previously resided with their mother, Plaintiff G.E. in an apartment in the Town of Brookline. In September 2014, following eviction

from their apartment, the children and their mother began living in transient conditions,

including in their car, in an art studio and gallery, and occasionally in hotels and nightly rentals.

The family had little local support in Massachusetts where the children's father and extended

relatives remain in Israel. The family's goal was to keep the children in the same school district

despite their living disruption in order to ensure this measure of stability in their lives and

support school success.

The children were terminated from Brookline Public Schools in November 2014.

On January 13, 2015, based on information provided to the Department of Elementary

and Secondary Education (the "Department"), the children were found to be qualified to attend

the Public Schools of the Town of Brookline under the McKinney-Vento Homeless Assistance

Act (the "Act"). The Department found the children lacked a "fixed, regular, and adequate

nighttime residence," and were therefore homeless. The Department further found the children

had a right to attend school in the Town of Brookline, the district in which they were last

enrolled.

On March 31, 2016 the family received a letter from the Public Schools of Brookline,

Massachusetts indicating the children's attendance at Brookline Schools would be terminated at

the close of school April 08, 2016. The letter alleged documentation provided by the town

assessors of Fall River and Brighton, Massachusetts indicated Plaintiff G.E. was the sole owner

of two separate condominiums in those communities. The letter concluded the apparent

ownership of the condominiums met the criteria of having fixed, regular and adequate housing.

The letter made no inquiry into whether the family actually resided in or had access to the Fall

River and Brighton Condominiums, or whether the condominiums were leased to other tenants.

The letter made no inquiry as to the actual, current address of the family, or whether the family remained living in transient conditions.

Plaintiff G.E. completed an appeal form dated April 13, 2016 and submitted it to the Department. Plaintiff's appeal  provided the names and contact information for the people living in the apartments and explained her presence on the deeds and mortgages as having provided assistance to family members in Israel to purchase the properties as investments. Plaintiff's appeal emphasized the family had never lived in the condominiums, had never used them for a residential address and had no reasonable or actual claim as residents in those properties for any purpose. Plaintiff additionally revealed the very sensitive and private fact of her role as a victim in a violent home invasion crime while the family was still living in Brookline and provided information as to the victim witness advocate involved in the matter and the details of the ongoing criminal prosecution of the perpetrator.

The Department responded via email dated April 15, 2016 requesting an extensive list of further documentation on the family's living arrangements. The Department requested the documents be provided no later than April 20, 2016. In particular, the Department requested Plaintiff G.E. provide:

- A copy of her visa/immigration status documentation

- A copy of the mortgage documents for the Fall River and Brighton properties

-  A copy of current, signed leases for the Fall River and Brighton properties

- Plaintiff G.E.'s W2 for 2015

- Written permission from the owner of the art studio and gallery where the family had been spending nights

- Receipts for all of the hotel's where the family had stayed nights (The Department's request alleged the confirmation emails previously provided by Plaintiff showed only that the reservation was made, but were not evidence Plaintiff "went through with" the reservation)

- Documentation for the locations where Plaintiff parked her car when the family was sleeping in the car

- A copy of any parking permits paid for by Plaintiff

- An explanation Plaintiff's homestead claim on the Brighton Condominium

- Documentation  regarding the criminal matter in which Plaintiff was a victim

Plaintiff G.E. responded with concern as to the confidentially and sensitive nature of the requested documentation emphasizing the importance of maintaining the family's privacy for safety and security reasons, particularly in the context of the ongoing criminal matter. Plaintiff requested information as to the individuals who would be revising and have access to the documents. Plaintiff also pointed out the family was in the midst of observing certain religious holidays which would impact her ability to gather and provide responsive documents.

On April 21, 2016 Plaintiff received a letter from the Department (dated April 20, 2016) addressed to Brookline Public Schools indicating Plaintiff "owned houses in Fall River and Boston, and failed to demonstrate that the family lacks a fixed, regular, and adequate nighttime residence." The letter concluded that the children were not homeless and did not have a right under McKinney-Vento to be enrolled in Brookline schools. Plaintiff G.E. subsequently received a second letter dated April 20, 2016, effective on the same date, the children's enrollment at

Brookline High School and Devotion School had been terminated. In accordance with that letter, the children were dis-enrolled on April 20, 2016.

This lawsuit seeks the immediate re-enrollment of S.E. and O.E. on several grounds. First, the Act expressly requires that students claiming to be experiencing homelessness are entitled to remain in their chosen school until the full resolution of any dispute. By filing this case today it is clear that this dispute is ongoing and, accordingly, the children are entitled to continue attending school pending a final decision by a court. Second, the Department erred by refusing to continue to recognize the children as homeless under the Act. It is well-settled that there is no arbitrary cut-off to homelessness, and the status of these children has remained unchanged since they were first recognized as homeless under the Act. Third, the Act provides that even if the children were to become permanently housed during the school year due to a change in circumstance, they are nonetheless entitled to remain in the same school until the end of the academic year. The children were recognized as homeless at the commencement of the 2015 - 2016 academic year and were therefore eligible to remain in school through June 2016.

The McKinney-Vento Act was created to ensure school stability for children like plaintiffs who are living in transient circumstances due to economic hardship. This family emigrated from Israel and had little local support from family and other relatives. The children's father resides in Israel and was unavailable to provide physical support. Plaintiff G.E. was the victim of a violent crime whose prosecution remains open and ongoing and whose facts caused Plaintiff to be particularly sensitive to sharing personal and confidential details.

Plaintiffs ask this Court to ensure these children receive the important protections of the McKinney-Vento Act and that the Town of Brookline be directed to immediately re-enroll these

children in their respective schools in accordance with the Act's "pendency" mandate an in light

of their continuing homelessness status. Plaintiffs also seek an order directing both the Town of

Brookline and the Department to review  and revise all policies and practices that fail to comply

with the procedural protections of the Act and which act as barriers to ensuring school stability

for all children experiencing homelessness.


## JURISDICTION AND VENUE

1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and

    20 U.S.C. 1415(b)(6) on the ground that this action arises under the laws of the United

    States, including 42 U.S.C. § 1983.

2.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), on the ground that the

    events or omissions giving rise to the federal claims set forth herein occurred in the

    District of Massachusetts, where the named plaintiffs reside.

3.  There is an actual controversy between the plaintiffs and defendants within the meaning

    of the Declaratory Judgment Act, 28 U.S.C. § 2201.

## PARTIES

4.  S.E. is a 15-year-old girl in grade 10.

5.  O.E. is a a 11-year-old girl in grade 6.

6.  G.E. is the mother of the named plaintiffs who brings this lawsuit on behalf of her

    daughters.

7.  Defendant Brookline Public Schools ("Brookline" or "District") is a Local Education

    Agency ("LEA") within the meaning of the McKinney-Vento Act. The District

establishes local rules and practices concerning the enrollment, transportation, and

education of children within its district, including homeless children.

8.  Defendant Mitchell D. Chester is Commissioner of Elementary and Secondary Education

for the Commonwealth of Massachusetts Department of Elementary and Secondary

Education ("Department"), which is an executive agency of the Commonwealth of

Massachusetts that oversees and supervises the Commonwealth's public education

system. The Department is responsible for the general supervision of LEAs and is the

"State Educational Agency" ("SEA") within the meaning of the McKinney-Vento Act.

the Department is a recipient of federal funds under McKinney-Vento and, by accepting

those funds, the Department is required to comply with all provisions the Act and to

ensure compliance by LEAs, including the District. Commissioner Chester is sued in his

official capacity only.

9.   At all relevant times, defendants were acting, or purporting to act under color of state

law.


**KEY PROVISIONS OF THE MCKINNEY-VENTO ACT**

10. The McKinney-Vento Act was enacted in 1987 to provide a broad range of assistance to

homeless individuals and families and was significantly amended in 1990. subtitle VII-B

of the Act relates to the education of homeless children and youth. 42 U.S.C.

§11431-11435.

11. The Act states that children and youth who "lack a fixed, regular, and adequate nighttime residence" shall be considered homeless and entitled to the Act's protections. 42 U.S.C. § 11434(a)(2)(A).

12. In enacting McKinney-Vento, Congress made funds available for states to assist with the education of homeless children on the condition that "[e]ach State education agency shall ensure that each child of a homeless individual and each homeless youth has equal access to the same free, appropriate public education…as provided to other children and youths." 42 U.S.C. § 11431(1).

13. Under the Act, Local Education Agencies must ensure that homeless children and youth are advised of their choice of schools, immediately enrolled in their selected school, and promptly provided necessary services to allow homeless children to exercise their choice of schools; LEAs must also provide families with a written education of school selection or enrollment decision, including rights of the family to appeal the decision. 42 U.S.C. § 11432(e)(3)(E).

14. The Act provides in part that a school district such as Defendant District shall, according to the child's "best interest," "continue the child's or youth's education in the school of origin for the duration of homelessness," or, if the child becomes permanently housed, for the remainder of the school year. 42 U.S.C. § 11432(g)(3)(A)(i).

15. Under the Act, "school of origin" is defined as the school the child most recently attended or the school the child attended when last permanently housed. 42 U.S.C. § 11432(g)(3)(G).

16. Thus the Act expressly provides that a homeless child should remain in the current school (or the school she attended when last permanently housed) rather than attend the local school where the family is actually living.

17. Under the Act, the child may remain in the school that is chosen "for the duration of homelessness," or in the case of a student who finds permanent housing during the school year "for the remainder of the academic year." 42 U.S.C. § 11432(g)(3)(A).

18. In the event an LEA determines that a child must attend a school other than a school requested by a parent or guardian, it must provide the parent with a written explanation, along with notice of the right to appeal. 42 U.S.C. § 11432(g)(3)(B)(ii).

19. If there is a dispute about school enrollment, the child or youth must be immediately admitted to the school in which the parent or guardian is seeking enrollment pending full resolution of the dispute process. 42 U.S.C. § 11432(g)(3)(E). Plaintiff's refer to this as the Act's "pendency" requirement.

20. The Act further provides that LEAs "shall review and revise any policies that may act as barriers to the enrollment of homeless children and youths" and that "[s]pecial attention shall be given to ensuring the enrollment and attendance of homeless children and youths who are not currently attending school." 42 U.S.C. § 11432(g)(7)(C).

21. Pursuant to the requirements of the McKinney-Vento Act, Massachusetts has established The Office for the Education of Homeless Children and Youth (the "Office") and developed certain guidance which further delineates how the State and LEAs shall comply with requirements set forth in the Act.

22. The Office employs a State Coordinator who is responsible for program coordination and coordination at the state level, as well as dispute resolutions amount LEAs.

23. The Office has issued guidance to school districts and others regarding the aforementioned requirements of the McKinney-Vento Act, including the process established by the State to resolve enrollment disputes and ensure pendency, in the form of an advisory entitled, "Homeless Education Advisory 2003 - 7: McKinney-Vento Homeless Education Dispute Resolution Process."

24. Pursuant to the Advisory , if a dispute arises over school selection or enrollment, the child or youth involved but be immediately admitted to the school in which they are seeking enrollment, pending resolution of the dispute, 42 U.S.C. § 11432(g)(3)(E)(i), and the parent or guardian must be provided with a written explanation of the school's decision on the dispute, including the right to appeal. 42 U.S.C. § 11432(g)(3)(E)(ii). Moreover, the parent/guardian/youth must be referred to the school district McKinney-Vento contact person ("LEA Liaison"), who will carry out the state's dispute resolution process as expeditiously as possible after receiving notice of the dispute. 42 U.S.C. § 11432(g)(3)(E)(iv).

25. In accordance with the express provisions of the Act, the LEA liaison must ensure that the child or youth is immediately enrolled, explain the dispute resolution process to families and help them use it. 42 U.S.C. § 11432(g)(3)(E)(iii).

26. The LEA is also required to issue a written disposition of the dispute within 20 business days after the LEA liaison is notified of the dispute. The disposition shall be provided to the parent, guardian or unaccompanied youth and must explain the "basis for the

decision" and advise the parent, guardian, or youth of the right to appeal. 42 U.S.C. §
11432(g)(3)(E)(i).

27. The Advisory adopts certain excerpts from the U.S. Department of Education (USDE)
Non-Regulatory Guidance, which will guide the Commissioner in making determinations
regarding enrollment of students.

28. The Guidance provides, "Best interest of the child" shall be determined utilizing the
guidance provided in G-2: "In determining a child or youth's best interest, an LEA must,
to the extent feasible, keep a homeless child or youth in the "school of origin" unless
doing so is contrary to the wishes of the child or youth's parent or guardian, or
unaccompanied youth."

29. The Guidance further provides, "Feasibility" shall be determined utilizing the guidance
provided in G-4: "As stated above, to the extent feasible, a district must educate a
homeless child or youth in his or her school of origin, unless doing so is contrary to the
wishes of the parent or guardian.. The placement determination should be a student-
centered, individualized determination.


## FACTUAL ALLEGATIONS

*Background*

30. Plaintiff students have attended schools in the Town of Brookline School District since 2010.

31. Plaintiff S.E previously attended Devotion School since the fifth grade and graduated the
Devotion School before attending Brookline High School.

32. Plaintiff O.E. entered the first grade at Devotion School. Plaintiff O.E. has only ever attended Devotion School since emigrating to the United States from Israel.

33. Both children were "A" students until the underlying events surrounding their homelessness affected their studies.

34. Both children have established strong social networks in Brookline Public Schools.

*Eviction from Brookline Housing and Termination from Brookline Public Schools*

35. In September 2014 the family was evicted from their Brookline apartment.

36. Plaintiff's subsequently became homeless in September 2014.

37. Plaintiff's began living in transient conditions, including in their car, in an art studio and gallery, and occasionally in hotels and nightly rentals.

38. The children were terminated from Brookline Public Schools in November 2014.

39. The children were unable to attend school during the period November 2014 through January 2015.

40. The children were found to be homeless under the McKinney-Vento Act in January 2015.

41. The children were re-enrolled in the Brookline Public Schools on or about January 13, 2015.

42. The children were found to be ineligible to attend Brookline Public Schools on or about March 31, 2016.

43. The children were terminated from the Brookline Public Schools April 20, 2016.

*Psychological, Emotional and Academic Consequences of Termination*

44. Since their termination from Brookline Public Schools the children have been unable to complete their academic curriculum, have been unable to participate in testing and exams, including MCAS, have been unable to earn grades for their partially completed studies.

45. The children's father subsequently demanded their return to Israel as they were unable to enroll in any local school.

46. On May 08, 2016 the children returned to Israel.

47. Since returning to Israel the children have become enrolled in school; however, they have been bale to meaningfully participate either in class work or end of year testing and exams as they were not present for the local curriculum throughout the academic year.

48. The children will likely fail their respective academic grades.

49. Plaintiff S.E. will likely be held back and will be unable to graduate high school in a timely manner as a result of the missed time in school.

50. Both children have experienced declining academic success and achievement. Plaintiff S.E. previously earned a first place award in French and Plaintiff O.E. previously won first prize in a school wide science fair. Both children previously earned "As" in their academic studies.

51. The children have been unable to maintain their previous success given the disruption in their studies.

52. Plaintiff O.E. was unable to graduate from elementary school to middle school, and was unable to participate in a state wide science fair.

53. Both children have experienced substantial emotional and psychological trauma as a result of their termination from Brookline Public Schools.

54. Both children have experienced symptoms of stress, anxiety and trauma as a result of the termination including, crying, anger, loss of appetite, loss of sleep, and a high degree of anxiety and uncertainty regarding their future.

55. Shortly after being terminated from Brookline High School Plaintiff S.E. experienced pain in her chest, left side and left arm. Plaintiff S.E. became unable to breathe normally or stand straight. Plaintiff S.E. became convinced she was experiencing heart attack. Plaintiff S.E. required emergency medical treatment.

56. Plaintiff O.E. witnessed Plaintiff S.E.'s traumatic medical symptoms and became convinced her older sister was going to die.

57. Both children have experienced a high level of shame resulting from their termination from the Brookline Public Schools.

58. Both children felt ashamed and anxious and embarrassed following their termination from the Brookline Public Schools when they were unable to say good bye or explain their disappearance from the community.

59. After returning to Israel Plaintiff S.E. was forced to explain she was "kicked out of school in America" when questioned by family members, school teachers and friends as to her sudden and unscheduled reappearance.

60. Both children have been separated from their mother who has consistently been their primary and sole caretaker.

61. Both children have been separated from established social and community networks.

62. Currently the children will remain in Israel with there father for the summer holiday and return to Massachusetts in the Fall for the commencement of the new academic year.

61. Beginning in September 2014 and continuing to the present, Plaintiffs have lacked "a fixed, regular, and adequate nighttime residence" and qualify as homeless within the definition of the McKinney-Vento Act.

*Underlying Appeal*

62. The children began this year in the District.

63. Without any advance warning, the family received a letter from the District dated March 31, 2016 indicating the children would be ineligible to attend Brookline Public Schools as of April 08, 2016.

64. The March 31, 2016 letter was the first indication the family had that the children were no longer entitled to the protections of the McKinney-Vento Act.

65. Although the letter referenced a right to request a hearing, the letter did not explain the dispute resolution process under the Act.

66. The letter alleged the basis of the determination to be, "Documentation provided by the town assessors of Fall River and Brighton, Massachusetts" indicating Plaintiff G.E. was the sole owner of two separate condominiums in those communities.

67. The letter alleged that because Plaintiff G.E. was listed on the deeds of the Fall River and Brighton condominiums that such ownership met the criteria of having fixed, regular, and adequate housing.

68. The letter provided no evidence or allegation as to the family actually residing at those addresses.

69. The letter provided no evidence or allegation contradicting the families' actual ongoing transiency.

70. The letter also failed to offer to assist the family in any way to utilize or access the State's dispute resolution process by submitting a complaint to the State Coordinator.

71. Due to concerns that the children were now subject to dis-enrollment, Plaintiff G.E. tried desperately to learn what options, if any, she could pursue under the McKinney-Vento Act.

72. Plaintiff G.E. eventually received access to the appropriate form to appeal the school enrollment decision.

73. Using this form, Plaintiff G.E. filed an appeal of the District's decision with the Department April 13, 2016.

74. On April 15, 2015 Plaintiff G.E. received a request (via email) from a Department designee who requested an extensive list of documentation to allegedly support the families ongoing homelessness.

75. Requested documents were both highly personal and sensitive in nature and seemingly unrelated to the issue of whether Plaintiff G.E.'s ownership of the Fall River and Brighton Condominiums disqualified the family from a homeless designation under the Act, including copies of Plaintiff's immigration status documentation and her W2 for 2015.

76. Requested documents were included to harass and intimidate the family, including "written documentation of where you park your vehicle when you sleep in your car," and documentation as to the status of the pending criminal matter where Plaintiff G.E. was the victim of a violent home invasion.

77. Requested documents were additionally nonsensical including, "actual receipts for all hotels where the family stayed during their period of homelessness," where the confirmation emails were alleged, "only to show" that a reservation was made, but did "not show evidence that you went through with the reservation."

78. The volume of documentation requested to be provided in five days time in the midst of the families observance of certain religious holidays made it unlikely and improbable Plaintiff G.E. would be able to satisfy the request.

79. Plaintiff G.E. responded requesting additional details regarding who would have access to her highly personal and sensitive information.

80. Plaintiff G.E. was unable to gather the documents requested and additionally was anxious to reveal such sensitive documents whose review could potentially put her families' safety and security at risk, especially in light of the ongoing criminal matter in which she was a victim.

81. On April 21, 2016 Plaintiff received (via email) correspondence from the Department and addressed to Brookline Public Schools dated April 21, 2016 indicating  her appeal was denied and the children were no longer considered homeless under the Act. The correspondence alleged, "[Plaintiff G.E.] owns houses in Fall River and Boston and has failed to demonstrate the family lacks a fixed, regular, and adequate nighttime residence."

82. [Plaintiff G.E.]  additionally received correspondence dated April 20, 2016 from Brookline Public Schools indicating the children's enrollment was immediately terminated and suggesting Plaintiff G.E. enroll the children in the "town or city in which you reside."

83. As a result of the Defendant's decisions and practices, Plaintiff's have been denied the protections and entitlements of the McKinney-Vento Act, including the right to remain in the

same school for the duration of homelessness, the right to remain in the same school for the

remainder of an academic year if it is determined that the child is permanently housed, the

right to be informed in writing of the legal basis for the District and Department decisions to

deny continuing enrollment, and the right to be apprised of and supported in the filing of an

appeal.

84.  Plaintiff's have no adequate remedy at law.

## COUNT I
## VIOLATIONS OF THE MCKINNEY-VENTO ACT
## BY DEFENDANT DISTRICT

85.  Plaintiff's hereby repeat and incorporate by reference each of the allegations in the

paragraphs set forth above.

86.  Defendant District violated Plaintiff's rights under the McKinney-Vento Act, 42 U.S.C. §

11431-11435, as enforced by 42 U.S.C. § 1983 by:

a.  Failing to ensure school stability for plaintiff students for the duration of homelessness.

*See* 42 U.S.C. § 11432(g)(3)(B)(i).

b.  Failing to permit the students to remain in the same school pending full resolution of this

dispute. 42 U.S.C. § 11432(g)(3)(E).

c.  Failing to provide plaintiff's with a written explanation of the District's decision, failing

to appraise the family of their right of appeal, and failing to assist the family to file an

appeal. 42 U.S.C. § 11432(g)(3)(B)(i) and 42 U.S.C. § 11432(e)(3)(E).

d.  Failing to establish policies and procedures to ensure compliance with the Mckinney-

Vento Act and to review and revise policies or practices that may act as barriers to the

enrollment or attendance of homeless children in the District, or children's receipt of

comparable services as defined in Part B of Title VII of the McKinney-Vento Act. 42

U.S.C. § 11432(g)(1)(F); 42 U.S.C. § 11432(g)(1)(I), 42 U.S.C. § 11432(g)(6) and (7),

and 42 U.S.C. § 11432(g)(3)(E)(iii).

e. Failing to ensure the enrollment and attendance of homeless children and youths who are

not currently attending school in accordance with the Act. 42 U.S.C. §11432(g)(7)(C).

## COUNT II
## VIOLATIONS OF THE MCKINNEY-VENTO ACT
## BY DEFENDANT DEPARTMENT

87. Plaintiff's hereby repeat and incorporate by reference each of the allegations in the

paragraphs set forth above.

88. Defendant Department violated Plaintiff's rights under the McKinney-Vento Act, 42 U.S.C.

§ 11431-11435, as enforced by 42 U.S.C. § 1983 by:

a. Failing to fully resolve the dispute in favor of plaintiffs to ensure the children can remain

enrolled so long as they are homeless or until the end of the school year in which they

become permanently housed. 42 U.S.C. § 11432(g)(3)(A).

b. Failing to ensure that plaintiffs have a fair and prompt process for challenging and

resolving enrollment disputes affecting homeless children. 42 U.S.C. § 11432(g)(1)(C).

c. Failing to direct the School District to (i) provide plaintiffs with written notice and an

explanation of the District's basis for ending enrollment; and (ii) direct the District and

its Local Homeless Liaison to provide assistance to Plaintiff's and to help them access

the dispute resolution process. 42 U.S.C. § 11432(e)(3)(E) and 42 U.S.C. § 11432(g)(2)(A).

d.   Failing to ensure that the District complied with the Act, including failing to review, revise and eliminate policies and practices that act as barriers to school enrollment or failing to give homeless students and their families written notice of their decision and their right to appeal as required by the Act. 42 U.S.C. § 11432(g)(2)(A).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff's request that this Court:

1.   Issue a declaratory judgment against defendants declaring that they have violated the rights of plaintiff students as set out in this Complaint.

2.   Issue a preliminary injunction directing the District to immediately re enroll plaintiff students in the District due to this ongoing dispute in accordance with the pendency provisions of the Act. 42 U.S.C. § 11432(e)(3)(E).

3.   Issue a permanent injunction directing the District to:

a.   maintain enrollment of plaintiff students in the District for the duration of homelessness, in a manner consistent with the terms of the McKinney-Vento Act. *See* 42 U.S.C. § 11432(g)(3)(B)(i).

b.   Develop policies and procedures to ensure that homeless students and their families, including Plaintiff's receive required notice of their right to appeal, a written explanation of the District's decisions, and assistance in filing an appeal.

4.   Issue a permanent injunction compelling defendant Department to:

    a.   revise its practices for addressing McKinney-Vento disputes to require the State

          Coordinator to issue a written decision in every case explaining the basis of its decision,

          describing its investigation, and advising families of their rights to further appeal.

    b.   Institute policies and procedures to closely monitor the practices of school districts to

          ensure full compliance with the Act.

5.   Award plaintiffs their costs and reasonable attorney's fees;

6.   Award such other and further relief as the Court may deem appropriate.

Respectfully submitted this *14th* Day of June 2016,

G.E.
By her attorney,

_____
**Cynthia E. MacCausland, Esq.**
BBO # 676990
Law Offices of Cynthia E. MacCausland
470 Washington Street
Norwood, MA 02062
Tel: 617.284.3804